## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **CRIMINAL ACTION 05-00011-WS** |
| ) | |
| **KELVIN ELLIS,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

This cause is before the Court on the defendant's Motion to Fix the Trial in the Northern Division (doc. 16) and Motion to Dismiss Counts Two and Three of the Indictment (doc. 14). Both Motions have been briefed and are ripe for disposition at this time.

### I.      Background.

On or about January 27, 2005, a federal grand jury in the Southern District of Alabama indicted defendant Kelvin Ellis on three counts relating to an alleged armed robbery of a Burger King franchise located at 1806 West Dallas Avenue, Selma, Alabama on July 27, 2002. In particular, the indictment charged Ellis with being a felon in possession of a firearm (to-wit: a Llama semi-automatic, .45 caliber pistol), in violation of 18 U.S.C. § 922(g)(1) (Count One); obstruction or delay of commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a) (Count Two); and the use, carrying and brandishing of a firearm during the crime of violence described in Count Two, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three).

The trial of this action has recently been continued to the June 2005 criminal term to accommodate defendant's ongoing discovery, review and evaluation of certain DNA evidence that the Government intends to offer at trial.

### II.      Motion Regarding Venue.

Defendant first requests that the venue for trial be fixed in the Northern Division of the Southern District of Alabama. In support of this Motion, Ellis asserts that he articulated his wish to be tried in the Northern Division as early as his arraignment, that all witnesses (excepting federal agents) reside in

Selma (approximately 160 miles from Mobile) or its surrounding environs, and that failure to include

Northern Division residents on his venire panel would deprive defendant of his Sixth Amendment right

to a jury selected from a fair-cross section of the community and would also violate the Equal

Protection rights of residents of the Northern Division to serve on federal criminal juries.

### A.       Constitutional Issues.

As a threshold matter, the Court cannot agree with defendant's attempts to transform this

request into one of constitutional dimensions.  The Eleventh Circuit has unequivocally held that "there is

no constitutional right to trial within a division."  *United States v. Betancourt*, 734 F.2d 750, 756 (11th

Cir. 1984); *see also* U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the

right to a speedy and public trial, by an impartial jury of the State ***and district*** wherein the crime shall

have been committed....") (emphasis added); *see also United States v. Burns*, 662 F.2d 1378, 1382

(11th Cir. 1981) ("a division has no constitutional significance").[1]  The Jury Selection and Service Act of

1968 echoes and reinforces these authorities by providing that those entitled to a jury trial "shall have

the right to grand and petit juries selected at random from a ***fair cross section of the community in***

***the district or division wherein the court convenes*."  28 U.S.C. § 1861 (emphasis added).

Likewise, defendant's broad-based constitutional attack on the jury selection plan adopted in

the Southern District of Alabama is unavailing.  Ellis sharply criticizes the implementation of this

District's Plan for the Random Selection of Grand and Petit Jurors, as amended on April 17, 1992 and

approved by the Reviewing Panel of the Judicial Council of the Eleventh Circuit on September 30,

1992.[2]  In particular, he argues that "[t]he practice of selecting the panel from solely from [*sic*] the

---

[1]        This assessment has been echoed by other appellate courts.  *See United States v.*
*Erwin*, 155 F.3d 818, 824 (6th Cir. 1998) ("there is no constitutional or statutory requirement that a
defendant's trial take place in a specific courtroom or division within a federal judicial district"); *United*
*States v. Herbert*, 698 F.2d 981, 984 (9th Cir. 1983) (district court has discretion to fix the place of
trial at any place within the district); *United States v. Young*, 618 F.2d 1281, 1288 (8th Cir. 1980)
("there is no constitutional right to a trial within a certain division").

[2]        The Plan provides, in part, that the names of petit jurors to attend court in Mobile will
be drawn from the Southern Division qualified wheel, while those to attend court in Selma will be drawn
from the Northern Division qualified wheel, except that the court may direct a petit jury to be

southern [division] results in a substantial under-representation of African- Americans" because of the higher concentration of African-Americans in the Northern Division than in the Southern Division, thereby "provid[ing] an opportunity for discrimination." (Motion, at 4.)

Any suggestion by defendant that this District's jury plan is violative of the Equal Protection rights of Northern Division residents to serve on federal criminal juries must fail for three reasons. First, in the nearly 13 years since its adoption, this District's current jury plan appears never to have been struck down or invalidated in whole or in part; to the contrary, the Eleventh Circuit Reviewing Panel specifically reviewed and approved it in its present form. Second, a number of federal courts have explicitly rejected claims of constitutional violations where a jury venire is drawn only from one division or another, even if the venire is mustered from the division where trial is held, not the division in which the offense occurred, and even if there are significant demographic differences between the divisions. *See, e.g., United States v. Baker*, 98 F.3d 330, 337 (8th Cir. 1996) ("There is no statutory or constitutional right to a jury drawn either from the entire judicial district or from the division in which the offense occurred."); *United States v. Bahna*, 68 F.3d 19, 24 (2nd Cir. 1995) (reaffirming jury plan that caused criminal juries to be selected from division where court convenes, despite demographic differences in divisions, where "[a] petit jury may be drawn constitutionally from only one division and not the whole district"); *Humphrey v. United States*, 896 F.2d 1066, 1068 (7th Cir. 1990)("Federal defendants are often tried in a venue at some distance from the location of the underlying offense....[y]et as long as the trial takes place within the district in which the offense took place, no error occurs."); *United States v. Balistrieri*, 778 F.2d 1226, 1229 (7th Cir. 1985) (jury need not be selected from division in which crime was committed); *Zicarelli v. Dietz*, 633 F.2d 312, 317-18 (3d Cir. 1980) (no constitutional right to jury chosen either from division where offense was committed or from entire district which includes that division); *United States v. Davis*, 2001 WL 1662485, *5 (6th Cir. Dec. 27, 2001) (defendant's right to representative cross-section of community was not violated where empaneled jury was chosen from division in which trial was held, rather than division in which crime occurred); *see generally United States v. Grisham*, 63 F.3d 1074, 1080 (11th Cir. 1995) ("the Sixth

---

assembled from the district at large in appropriate instances.

Amendment does not entitle a federal criminal defendant to a jury summoned from a fair cross-section of the community immediately surrounding the place of the crime, but merely to a jury drawn from a fair cross-section of some previously defined geographical area within the boundaries of the judicial district in which the offense occurred"); *United States v. Miller*, 116 F.3d 641, 659 (2nd Cir. 1997) (constitutional guarantee of impartial jury "of the State and district" where crime was committed does not require narrower geographic focus than district itself); *United States v. Aguero*, 248 F. Supp.2d 1150, 1155 (S.D. Fla. 2003) ("as long as there is no allegation of racial gerrymandering, selecting juries at random from a predetermined geographical area provides a sufficiently diverse jury pool to ensure impartiality") (citation omitted); *United States v. Taylor*, 316 F. Supp.2d 722, 729-30 (N.D. Ind. 2004) (denying request for venire drawn from place of offense (Hammond Division) and finding that defendants have no constitutional right to have jury selected from Hammond Division (with 19.6% African-American population) if case is tried in South Bend Division (with 6.3% African-American population)).

Third, Ellis's reliance on *dicta* from the *Grisham* decision is misplaced.  Defendant emphasizes language from *Grisham* in which the panel opined that, "If the Northern District selected juries only from the area used to determine the venue of trial, the consequence would be that residents of the Northern District outside the Southern Division would be precluded from serving on federal criminal juries," thereby implicating Equal Protection concerns.  *Grisham*, 63 F.3d at 1082.[3]  Ellis argues that the Southern District's practice is to do exactly what *Grisham* warned against, inasmuch as criminal

---

[3]        The *Grisham* court upheld a plan in which the Northern District selected criminal juries from throughout the district, rather than limiting them to the Southern Division where criminal trials are generally held.  Yet Ellis argues that such a district-wide jury selection here would impinge on his constitutional rights because "[a] district wide selection process will strengthen the government's hand and unfairly weaken the defendant's right to a fair cross section of the community" by requiring jurors to travel long distances, highlighting "the awesome power of the Government," and discouraging thoughtful deliberation by jurors.  (*See* doc. 16, at 4.)  Thus, under Ellis's reasoning, the only constitutional solution here would be to allow him to have a venire drawn exclusively from the Northern Division and to conduct his trial in the Northern Division.  Ellis would apparently have this Court construe his Sixth Amendment rights to a fair cross-section far more expansively than did *Grisham* or any other authority that he cites.  The Court declines to do so.

cases are tried in the Southern Division, using venire panels assembled solely from Southern Division residents, such that residents of the Northern Division are effectively excluded from federal criminal juries. This is an incorrect characterization of this District's practice in criminal cases. The judges of this District Court are receptive to trying criminal cases emanating from the Northern Division in the Northern Division, when the circumstances render it appropriate and practicable to do so.[4]  If Northern Division residents are not serving on federal criminal juries, it is not because they have been systematically "excluded" in some way, but is rather because relatively few criminal cases emanate from the Northern Division, relatively few Northern Division defendants in appropriate circumstances request a Northern Division forum or a district at large venire, and most of those never reach trial because of guilty pleas.[5]  In appropriate cases, this Court can and does set criminal trials in the Northern Division and empanel Northern Division juries.[6]  It is simply not true that Northern Division residents are deprived of any opportunity to serve on criminal juries under the Southern District's jury selection plan and practice.[7]

---

[4]     Defense counsel correctly points out that the undersigned has recently reaffirmed its commitment in that regard at an informal meeting with members of the Dallas County bar.

[5]     Data from this District Court's electronic records reflects that during the 2004 calendar year, a total of seven criminal actions filed by the U.S. Attorney's Office were classified by the Clerk's Office as Northern Division cases. Not a single defendant in any of those seven Northern Division actions went to trial; rather, they all pleaded guilty before trial. Review of the docket sheets for those actions suggests that only one defendant (David Leon Adams) requested a Northern Division venue. His request was granted, but he proceeded to plead guilty.

[6]     For example, in *United States v. David Leon Adams*, Criminal No. 04-0035, the undersigned granted a defense motion to fix the trial in the Northern Division. A trial date was set in the Selma courthouse and a venire pool was constituted from the Northern Division. A week before trial, however, the defendant pleaded guilty.

[7]     Even if it were, the Court cannot accept defendant's position that the only viable remedy would be for Ellis to be tried in the Northern Division before an exclusively Northern Division jury. The clear import of *Grisham* is that any Equal Protection concerns may be vitiated by simply drawing a venire from the district at large. This District's plan expressly confers upon the undersigned discretion to order a venire from the district at large. The Court does not consider the wisdom or propriety of that alternative here, however, because defendant has not requested that his venire be

For all of the foregoing reasons, the Court concludes that constitutional considerations do not require that defendant's trial must be fixed in the Northern Division of the Southern District of Alabama. Therefore, the motion to change venue hinges on application of Rule 18.

### B.      Rule 18 Considerations.

Under Rule 18, Fed.R.Crim.P., a district court "must set the place of trial within the district with due regard for the convenience of the defendant and witnesses, and the prompt administration of justice."  *Id.*; *see also Betancourt*, 734 F.2d at 756 (in exercising discretion over venue, "the judge must consider (1) the convenience of the defendant, (2) the convenience of the witnesses, and (3) the prompt administration of justice"); *Burns*, 662 F.2d at 1382 (similar).  None of these factors militate in favor of fixing trial in the Northern Division.

The Court understands that defendant is presently in custody; therefore, it is difficult to conceive of how a trial in the Southern Division would work an inconvenience on him.  The U.S. Marshal's Office will be responsible for transporting and producing defendant wherever he may be tried.  Defense counsel is based in Mobile and is experienced in trying criminal actions in the Southern Division. Defendant apparently asserts that the convenience of the witnesses favors a Northern Division venue, inasmuch as "[a]ll of the witnesses, absent federal agents[,] are from Selma, Alabama, or its surrounding areas in Dallas County."  (Motion to Fix Venue, at 1.)  Defendant also suggests that "potential witnesses are less willing to cooperate and participate if they have to travel 160 miles for trial." (*Id.* at 4.)  However, Ellis fails to identify a single defense witness for whom it would be inconvenient to testify in Mobile, nor does he rebut the Government's contention that it is unaware of the existence of any defense witnesses or putative defense witnesses of any kind in this case.  Vague, inchoate notions of inconvenience to unidentified prospective defense witnesses are not a valid reason for shifting venue to the Northern Division.  And defendant offers no basis for finding that a Northern

_____

comprised of an "at large" sampling of qualified residents throughout the district, but has instead opposed such an arrangement as violative of his rights.  Hence, the only two options considered here are those which the parties have advanced, to-wit: (a) fix trial in the Southern Division before an exclusively Southern Division venire; or (b) fix trial in the Northern Division before an exclusively Northern Division venire.

-6-

Division setting would promote the prompt administration of justice to a greater extent than would a Southern Division trial.[8]

The Court finds, after "due regard" for the convenience of the defendant and witnesses, and the prompt administration of justice, that the proper venue for this trial lies in the Southern Division. Defendant's Motion to Fix the Trial in the Northern Division (doc. 16) is **denied**.

### III.     Motion to Dismiss.

Defendant's other pending motion is a Motion to Dismiss Counts Two and Three of the Indictment (doc. 14).  The crux of this Motion is Ellis' contention that the Hobbs Act exceeds Congress's authority by effectively transforming localized robberies into federal offenses under the guise of a gossamer interstate commerce nexus.  Ellis argues that the fast-food restaurant robbery of which he is accused lacked any substantial effect on interstate commerce and that the rationale used in finding any such interstate commerce connection is so diluted and strained that it would effectively authorize general federal jurisdiction over all crimes.

Whatever intuitive merit such contentions may or may not have, defendant acknowledges that binding precedent from the Eleventh Circuit is directly adverse to his position.  Indeed, the law in this circuit is quite clear that "a conviction for Hobbs Act robbery may be sustained if there is proof that the

---

[8]          By contrast, a variety of factors favor trying this action in the Southern Division.  The Court, court personnel, and all counsel are based in Mobile.  The jury section has already begun the process of constituting a Southern Division jury venire for the June 2005 criminal term, when this matter is set for trial.  A special Northern Division venire would have to be drawn separately for Ellis if venue were fixed in that division.  Moreover, a Mobile venue has the benefits of centralized procedures, larger facilities for conducting trial and securing in-custody defendants and witnesses, and more advanced security measures, all of which bolster efficient administration of justice in the Southern Division.  To be sure, all of these considerations can and properly might yield in the face of evidence of inconvenience to defendant or witnesses, or other reasons why the prompt administration of justice might favor a Northern Division setting.  But Ellis has offered no persuasive analysis that the Rule 18 factors support a Northern Division venue here.  To the extent that he seeks a trial in the Northern Division because of the demographics of that area, such a consideration is improper in the Rule 18 context.  *See United States v. McKinney*, 53 F.3d 664, 673 (5th Cir.1995) (noting that "an attempt to influence the racial balance of the jury by setting a case in a particular division would not have been appropriate or acceptable").

defendant's conduct had even a minimal effect on interstate commerce." *United States v. Gray*, 260 F.3d 1267, 1272 (11th Cir. 2001); *see also United States v. Vallejo*, 297 F.3d 1154, 1166 (11th Cir. 2002); *United States v. Castleberry*, 116 F.3d 1384, 1387 (11th Cir. 1997) (similar).  On several occasions, the Eleventh Circuit has affirmed Hobbs Act convictions where the underlying conduct was a robbery of a fast food restaurant or convenience store akin to that at issue here.  For example, in *Gray*, the defendant was convicted of violating the Hobbs Act, 18 U.S.C. § 1951, where he stole $300 and a money drawer from a Church's Chicken restaurant in Atlanta, Georgia.  The *Gray* court concluded that the evidence established the requisite "minimal effect on commerce," inasmuch as the robbery resulted in the loss of cash and a money drawer, disrupted the restaurant's normal operations, deprived the restaurant of a cash register, diminished the funds available to the restaurant to purchase goods and services from out-of-state suppliers, and impeded the restaurant's ability to transact business with out-of-state customers.  *Gray*, 260 F.3d at 1276.  Similarly, in *United States v. Guerra*, 164 F.3d 1358 (11th Cir. 1998), the defendant was convicted under the Hobbs Act for robbing approximately $300 from an Amoco service station in Florida.  Even though there was no evidence that the defendant stole any merchandise, the Eleventh Circuit found a sufficient interstate commerce nexus where the station sold products that originated from out of state, the station was closed for two hours because of a police investigation, and the business's assets (and hence ability to participate in interstate commerce) were depleted by the robbery.  *Guerra*, 164 F.3d at 1360-61.

Under a long line of Eleventh Circuit authority including *Gray* and *Guerra*, there is no room for serious dispute that there is a sufficient nexus between the indicted crime (*i.e.*, robbery of cash from an Alabama fast food restaurant that received all or most of its supplies from Georgia) and interstate commerce to confer jurisdiction upon this Court pursuant to the Hobbs Act.  Defendant's Motion to Dismiss (doc. 14) is therefore **denied**.  The Court understands that Ellis's intent in filing this Motion was to preserve the issue on appeal.  He has now done so.

DONE and ORDERED this 19th day of April, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE